IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

IN THE MATTER OF THE ARREST OF:
CHRISTOPER KEARNEY
LADARIUS EDWARDS
ANDRE BROWN

Case No. 4:20-mj-00075-SAO

**Filed Under Seal**

## AFFIDAVIT IN SUPPORT OF
## CRIMINAL COMPLAINT AND ARREST WARRANT

I, Joshua Carr, being duly sworn, do hereby depose and state as follows:

### Introduction and Agent Background

1. I am a Special Agent with the Drug Enforcement Administration (DEA) and have been since February 2015. My current assignment is the DEA Fairbanks Post of Duty in Alaska, investigating crimes related to violations of the Controlled Substances Act. My training and experience include the completion of twenty-weeks of DEA Basic Agent Training in Quantico, Virginia. This training focused on offenses under the Controlled Substance Act, related crimes, and successful methods used by law enforcement to detect, investigate and prosecute said offenses. I am familiar with investigations of drug trafficking organizations, including methods of importation and distribution of controlled substances, and the laws relating to forfeiture of drug proceeds, assets purchased with drug proceeds, assets used to facilitate drug crimes, or used to conceal detection of drug crimes. I have participated in no fewer than sixty investigations, including eight wiretap investigations. I have investigated organizations trafficking different controlled substances including cocaine, ecstasy, fentanyl, heroin, and methamphetamine. These investigations have resulted in the seizure of controlled substances, firearms, U.S. currency, as well as the prosecution of many defendants.

### Applicable Law

2. This affidavit is submitted to support a criminal complaint and arrest warrant for

Christopher KEARNEY, date of birth 08-05-1994 (hereinafter "KEARNEY"); Ladarius EDWARDS, date of birth 02-11-1995 (hereinafter "EDWARDS"); and Andre BROWN, date of birth 10-30-1973 (hereinafter "BROWN"), for distribution of fentanyl and conspiracy to distribute fentanyl in violation of Title 21 United States Code, Section 841(a)(1) and 846.

**Statement of Probable Cause**

3. I have obtained the facts set forth in this affidavit through my personal participation in the investigation described below; from oral and written reports of other law enforcement officer; and, from records, documents and other evidence obtained during this investigation.

4. In early November 2020, DEA Fairbanks learned of the drug overdose of an individual referred to hereinafter as SOI-1 (SOI-1 had consumed small blue pills suspected to be counterfeit oxycodone pills containing fentanyl). While Alaska State Troopers (AST) and medical personnel performed life saving measures on SOI-1, SOI-1's girlfriend assisted investigators with a search of SOI-1's phone. During the search, investigators located a series of Snapchat messages between SOI-1 and the Snapchat handle "irf_Kilo" which is the display name for an account named: "Originally_Him" (this account has been associated with KEARNEY through KEARNEY's subsequent jail phone calls). Investigators observed conversation indicative of a drug distribution in which "irf_Kilo" AKA "Kearney" sold narcotics to SOI-1, instructing SOI-1 to travel to 310 Tipperary Court. Later that day, investigators arrived at 310 Tipperary Court and observed a blue H3 Hummer parked in front of Apartment A which Task Force Officer (TFO) Halbert recognized as a stolen vehicle.

5. As a result of the Snapchat messages and observed stolen vehicle, TFO Werner applied for and received an Alaska State search warrant to search the Hummer and 310

Page | 2                                                                        Affidavit of Special Agent Joshua Carr

Case 4:20-mj-00075-SAO   Document 1-1   Filed 11/16/20   Page 2 of 7

Tipperary Apartment A. Shortly after receiving the authorized search warrant, investigators observed the Hummer departing the residence. The Hummer quickly became stuck in the snow and investigators contacted and detained the occupants: BROWN (driver) and KEARNEY (passenger). During a search of the vehicle, 59 small blue pills resembling counterfeit oxycodone pills suspected to contain fentanyl were located in the pocket of a black jacket on the back seat, the jacket pockets also contained BROWN's Florida ID, wallet, and $2,170. After receiving advisements according to Miranda v. Arizona (1966), BROWN claimed the jacket and ID as his own and admitted to purchasing and selling the pills in the Fairbanks Area.

6. During a search of the residence, investigators located nine additional blue pills and approximately 27 grams of suspected cocaine in a pair of shoes in the garage. After receiving advisements according to Miranda v. Arizona (1966), KEARNEY claimed the shoes were his own but denied any knowledge of narcotics. Both BROWN and KEARNEY were subsequently remanded to the Fairbanks Correctional Center. Later, TFO Reuter reviewed recorded jail calls made by KEARNEY where KEARNEY spoke with a female and instructed the female how to access the Snapchat account "Originally_Him" to delete the data associated with the account. Suspecting KEARNEY as the direct dealer to SOI-1, investigators followed up with SOI-1 and displayed an unmarked photograph lineup to SOI-1 who identified KEARNEY as the individual whom SOI-1 had purchased the pills which led to SOI-1's overdose.

7. TFO Werner applied for a state search warrant for the phones belonging to BROWN and KEARNEY. During a search of BROWN's phone, investigators discovered messages indicating BROWN was the head of a pill distribution network operating in Fairbanks with KEARNEY operating as a subordinate to BROWN.

8. Days later investigators interviewed an individual who was recently hospitalized after experiencing drug overdose symptoms which required cardio-pulmonary resuscitation and several doses of naloxone "Narcan" to be revived. This individual agreed to speak with law enforcement and signed a cooperation agreement with the DEA, and is hereinafter referred to as Confidential Source "CS". CS has no criminal history, however CS has abused prescription pills for several years, experiencing at least two overdoses in the past three months. CS is providing information to the government on their own volition and has not received any monetary benefits at this point in time. I have not described the background of CS in greater detail, because I know based on my experience that drug traffickers often spend lengthy amounts of time and energy reviewing and sharing their discovery for any details they can glean to ascertain the identity of individuals who may have assisted law enforcement resulting in fear, danger, threats of violence and other stressors placed on CS. Furthermore, I do not believe disclosing additional identifying information about CS would benefit or impede the finding of probable cause for the authorization requested in this affidavit.

9. In early November, 2020, Task Force Officer Nathan Werner and I met with CS to learn about their drug source of supply (EDWARDS). During the interview, CS provided a phone number for EDWARDS (907-371-7821) and described meeting EDWARDS at least weekly for over the past six months purchasing up to 30 Percocet pills per meeting. CS described gradually becoming aware the pills CS was purchasing were not legitimate pharmaceutical pills based on the color, quality, and residual effects. CS described purchasing four pills from EDWARDS within the days before CS consumed a fraction of one pill and quickly experienced overdose symptoms. A romantic interest near CS at the time, described to investigators observing slurred speech, pinhole pupils, and a "faded" demeanor. CS described

Page | 4                                                                                            Affidavit of Special Agent Joshua Carr

Case 4:20-mj-00075-SAO   Document 1-1   Filed 11/16/20   Page 4 of 7

waking up in a hospital bed with chest pain (from the numerous CPR compressions used to keep CS alive). CS displayed a series of text messages between CS Phone and 907-371-7821 (EDWARDS Phone). These text messages conveyed a relationship in which EDWARDS pressures CS when, where, and how much to purchase. CS described being afraid of EDWARDS and purchasing pills when EDWARDS demanded out of fear for CS's physical safety. CS described meeting with and purchasing pills and other controlled substances from EDWARDS at various locations throughout Fairbanks including EDWARDS' residence which CS described as an apartment complex on 25th Street.

10. CS signed a medical records release form but results have not yet been obtained from the medical facility. I sent a subpoena to AT&T for information related to EDWARDS Phone, but the provider has not yet responded to the subpoena. A search of law enforcement and criminal databases reveals Ladarius EDWARDS resides at 1420 25th Street, Apartment 1, Fairbanks, Alaska (APARTMENT) with a listed number of 907-371-7821 (EDWARDS Phone). Investigators provided and unmarked DMV photograph of Ladarius EDWARDS to CS, and CS confirmed this was the person CS had been purchasing pills from.

11. Days later, at the direction of law enforcement agents, CS contacted EDWARDS via telephone and requested to meet with EDWARDS to purchase several counterfeit Percocet pills. Investigators met with CS and searched CS's person and vehicle finding no weapons, currency or narcotics. CS was then provided with $600 in U.S. Currency and outfitted with an audio recording/transmitting device and monitored as CS traveled to 1420 25th Street, Apartment 1, Fairbanks, Alaska (the suspected residence of EDWARDS). There, CS met briefly with EDWARDS in the arctic entry of the APARMTENT and exchanged the currency for a small plastic bag of blue pills. Moments later, CS exited the APARTMENT and departed the parking

lot in CS's vehicle. Investigators monitored CS as CS traveled away from the APARTMENT where investigators met with CS and retrieved the audio recording/transmitting device and approximately 21 blue pills suspected to be counterfeit Percocet pills containing fentanyl. Investigators searched CS's person and vehicle a second time and found no weapons, currency or narcotics. The 21 blue pills have been sent to the DEA Western Regional Lab, forensic analysis results have not yet been received.

12. On November 13, 2020, U.S. Magistrate Judge Scott A. Oravec (District of Alaska) signed court order 20-MJ-00074 authorizing the search of 1420 25th Street, Apartment 1, Fairbanks, Alaska and the cellphone assigned call number: 907-371-7821 (EDWARDS Phone). That same day, officers executed the search warrants and located EDWARDS in the apartment with another male subject. EDWARDS was detained and transported to the Fairbanks Police Department. During a search of the residence, officers located over 200 pills suspected to be counterfeit Percocet and Oxycodone and one handgun. The pills discovered during the search have been sent to the DEA laboratory but have not yet been analyzed.

13. At the Fairbanks Police Department, TFO Werner and I interviewed EDWARDS regarding his involvement in drug trafficking. After receiving advisements according to Miranda v. Arizona (1966), EDWARDS initially deflected responsibility and involvement at one point questioning whether he should have a lawyer without unequivocally requesting one. EDWARDS continued speaking with investigators and when presented with evidence of CS's overdose, EDWARDS admitted to selling CS pills over the course of the past year and as recently as November 12, 2020 (admitting to selling the pills in the controlled

purchase described herein). When asked about EDWARDS source of supply for narcotics, EDWARDS stated he purchased his pills from "Kilo" and presented the snapchat handle for "irf_Kilo".

14. In conclusion, based on the facts contained herein and my training and experience, I have probable cause to believe that CS purchased pills from EDWARDS which led CS to overdose. I believe SOI-1 purchased pills from KEARNEY which led SOI-1 to overdose. I believe that EDWARDS is a drug trafficker who purchases pills from KEARNEY. I believe that KEARNEY is both a retail and wholesale drug distributor who purchases pills from and/or sells pills on behalf of BROWN. I believe the facts described herein support the arrest of EDWARDS, KEARNEY, and BROWN for the crimes of distribution of a controlled substance (fentanyl and/or oxycodone) and conspiracy to commit distribution of a controlled substance resulting in death or serious bodily injury, all of which is in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), and 21 U.S.C. § 846.

_____
Joshua Carr
Special Agent, DEA

~~Subscribed and~~ sworn in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at  7:49  ~~a.m.~~/p.m. on   14th   day of November 2020.



_____
HONORABLE SCOTT A. ORAVEC
United States Magistrate Judge